UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALAN LUGO-MONTALVO PETITIONER

V. CIVIL ACTION NO. 3:25-CV-789-DPJ-ASH

WARDEN CHILDRESS RESPONDENT

REPORT AND RECOMMENDATION

Pro se Petitioner Alan Lugo-Montalvo filed this 28 U.S.C. § 2241 habeas petition challenging the Bureau of Prisons' calculation of sentencing credits under the First Step Act (FSA). As explained below, the undersigned recommends the Court dismiss Lugo-Montalvo's petition without prejudice due to his failure to exhaust. Alternatively, the undersigned recommends the Court deny Lugo-Montalvo's petition on the merits.

I. Facts and Procedural History

On March 11, 2024, the United States District Court for the District of Puerto Rico sentenced Lugo-Montalvo to serve a 360-month term of incarceration after a jury convicted him on one count of conspiracy to possess with intent to distribute controlled substances. Lugo-Montalvo was committed to the custody of the BOP on June 11, 2024, and he immediately began earning FSA credits. As of January 20, 2026, Lugo-Montalvo, who is incarcerated at the Federal Correctional Complex in Yazoo City, has a projected statutory release date of January 12, 2044, based on the assumption that he earns all good-conduct time available to him, and a projected release date of May 2, 2043, with 255 days of FSA credit credited toward his sentence. *See* 28 C.F.R. § 523.20(b)(1) ("The [BOP] will award inmates up to 54 days of GCT credit for each year of the sentence imposed by the court. Consistent with this methodology, the [BOP] will initially

determine a projected release date by calculating the maximum GCT credit possible based on the length of an inmate's imposed sentence.").

Lugo-Montalvo believes he is entitled to an additional "[a]pproximately 1250 . . . accrued programming days which convert to 625 days of FSA" credits "toward his sentence reduction and RRC/HC placement." Pet. [1] at 1. He asks the Court to order the BOP to award the missing credits. Respondent responded in opposition to Lugo-Montalvo's petition, and Lugo-Montalvo filed a reply.

II. Analysis

Respondent says Lugo-Montalvo's petition should be dismissed for failure to exhaust, or, alternatively, denied on the merits. The Court agrees on both counts.

"The BOP is responsible for calculating sentencing credit, and the proper vehicle for raising . . . a challenge [to its calculation] is a petition pursuant to 28 U.S.C. § 2241 . . . in the district where the [petitioner] is incarcerated." *United States v. Sonsteng*, No. 2:17-539, 2021 WL 2380054, at *1 (S.D. Tex. June 9, 2021). To the extent Lugo-Montalvo's petition challenging the application of his FSA credits implicates the duration of his term of incarceration, it is properly before the Court. *See Maxwell v. Thomas*, 133 F.4th 453, 454 (5th Cir. 2025) ("[A] habeas petition 'is the proper vehicle to seek release from custody.'" (quoting *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020)), *cert. granted*, 2026 WL 1513325 (June 1, 2026).

A. Exhaustion

Before filing a § 2241 petition, "[a] federal prisoner seeking credit on his sentence . . . 'must first exhaust his administrative remedies through the'" BOP. *Castano v. Everhart*, 235 F. App'x 206, 207 (5th Cir. 2007) (quoting *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990)). The BOP's regulations provide for a multiple-step Administrative Remedy Program that

"allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10; *see generally id.* §§ 542.10–542.19 (Subpart B, Administrative Remedy Program). To begin the process, "an inmate shall first present an issue of concern informally to staff." *Id.* § 542.13. If informal resolution does not address the inmate's concerns, within "20 calendar days following the date on which the basis for the Request occurred," the inmate must file "a formal written Administrative Remedy Request, on the appropriate form (BP-9)." *Id.* § 542.14(a). Once a BP-9 is filed, "response shall be made by the Warden . . . within 20 calendar days." *Id.* Next, "[a]n inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a). The Regional Director then has 30 calendar days to respond, *id.* § 542.18, and "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response," *id.* § 542.15(a). The General Counsel has 40 calendar days to respond to the BP-11. *Id.* § 542.18.

"The filing of an appeal to the General Counsel 'is the final administrative appeal.' 28 C.F.R. § 542.15(a). Upon completing this multi-tiered review process, a federal inmate h[a]s exhausted h[is] administrative remedies for filing a § 2241 petition." *Gayton v. Rivers*, No. 3:23-CV-1842, 2023 WL 8007387, at *2 (N.D. Tex. Aug. 24, 2023), *report and recommendation adopted*, 2023 WL 8005316 (N.D. Tex. Nov. 17, 2023).

The records submitted by Respondent indicate that Lugo-Montalvo never began—much less completed—the administrative remedy process as to a claim regarding missing FSA credits. Landers Decl. [9-1] at 4; Landers Decl. Attach. D [9-5]. And Lugo-Montalvo does not claim to

have exhausted, instead arguing that exhaustion is not statutorily required and that he should be excused from any exhaustion requirement. Am. Pet. [4] at 2; *see also* Pet. [1] at 4–6. While it is true that exhaustion is not a jurisdictional prerequisite to seeking relief under § 2241, courts in the Fifth Circuit nevertheless require federal prisoners to "exhaust 'administrative remedies before seeking habeas relief . . . under . . . § 2241.'" *Mayberry v. Pettiford*, 74 F. App'x 299, 299 (5th Cir. 2003) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)). And although there are "[e]xceptions to the exhaustion requirement," they "apply only in extraordinary circumstances, and it is [Lugo-Montalvo's] burden to demonstrate the futility of administrative review." *Overshown v. Upton*, 466 F. App'x 361, 361 (5th Cir. 2012) (citing *Fuller*, 11 F.3d at 62).

Lugo-Montalvo argues exhaustion should be excused because the "BOP administrative remedy process typically requires 90 to 120 days to complete, which would only delay [Lugo-Montalvo's] petition to [the] Court based on [the BOP's] predetermined position with regards to FSA implementation . . . ." Pet. [1] at 6; *see also* Reply [11] at 3 (arguing, in conclusory fashion, that exhaustion is futile because the BOP continually responds after the deadline and provides unfavorable responses). But "[t]he fact that it takes time to exhaust administrative remedies does not excuse a prisoner from initiating and completing the process." *De La Garza Salinas v. Warden*, No. 3:24-CV-662-KHJ-MTP, 2025 WL 1297674, at *2 (S.D. Miss. Apr. 9, 2025), *report and recommendation adopted*, 2025 WL 1296185 (S.D. Miss. May 5, 2025). "Indeed, the United States Supreme Court has held that even inmates who may be entitled to immediate release must exhaust their administrative remedies." *Id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 494-95 (1973)); *accord Mosquera v. United States*, No. 3:25-CV-487-DPJ-ASH, 2025 WL 3681375, at *1 (S.D. Miss. Dec. 18, 2025). And the fact that a petitioner believes he will be unsuccessful in his pursuit of administrative remedies does not excuse the obligation to exhaust.

*Andrade v. Childress*, 3:25-CV-822-KHJ-MTP, 2026 WL 1140905, at *2 (S.D. Miss. Mar. 30, 2026), *report and recommendation adopted*, 2026 WL 1139640 (S.D. Miss. Apr. 27, 2026). "Even if the BOP is likely to deny relief, it does not make exhaustion futile." *Id.* (quoting *Wy v. Berkebile*, No. 3:08-CV-1894, 2008 WL 5262711, at *3 (N.D. Tex. Dec. 17, 2008)). Lugo-Montalvo has not shown he should be excused from administrative exhaustion.

B. Merits

Alternatively, Lugo-Montalvo's petition should be denied on the merits. The FSA created a system of "incentives and rewards for prisoners [who] participate in and complete evidence-based recidivism reduction programs" and other productive activities. 18 U.S.C. § 3632(d).

> It permits qualifying inmates to apply earned time credits towards prerelease community-based placements such as [in] a Residential Reentry Center or home confinement. 18 U.S.C. § 3624(g)(2). Further, at the discretion of the director of the BOP, time credits earned under the FSA may be applied towards release [to] supervision at an earlier date, not to exceed 12 months. [*Id.*] § 3624(g)(3).

*Duarte-Varsquez v. Warden, FCI Beaumont Low*, No. 1:24-CV-169, 2024 WL 4864618, at *3 (E.D. Tex. Oct. 28, 2024) (emphasis added), *report and recommendation adopted*, 2024 WL 4860787 (E.D. Tex. Nov. 20, 2024).

Lugo-Montalvo seeks credit for "the time endured on lockdown during Global COVID-19 Pandemic from January 2020 to June 2023." Pet. [1] at 1. But under 18 U.S.C. § 3632(d)(4)(B)(ii), "[a] prisoner may not earn [FSA] time credits . . . for an evidence-based recidivism reduction program that the prisoner successfully completed . . . during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." Under § 3585(a), a sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of a sentence at, the official detention facility at which the sentence is to be served." Because he was in federal custody on

the date of his sentencing, Lugo-Montalvo's sentence commenced that day—March 11, 2024. *See Arreola-Amaya v. Federal Bureau of Prisons*, 623 F. App'x 710, 710–11 (5th Cir. 2015) (where inmate was "exclusively in federal custody" at the time of his federal sentencing, "his federal sentence 'commenced' following his sentencing"); Landers Decl. Attach. A [9-2] at 3 (showing BOP computed Lugo-Montalvo's federal sentence beginning March 11, 2024). Lugo-Montalvo's cites no authorities, or facts, to the contrary. In summary, he could not earn FSA credit for time between January 2020 and June 2023 because his sentence had not yet commenced.

To the extent Lugo-Montalvo seeks FSA credit for the 92 days between his March 11, 2024 sentencing and June 11, 2024, when he arrived at his BOP-designated facility, courts disagree as to whether the BOP is required to award FSA credits for post-sentencing days spent before arrival at a BOP facility. *Compare Stinson v. Martinez*, No. 2:23-CV-751, 2024 WL 4969169, at *7 (W.D. La. Nov. 12, 2024) (concluding that "the FSA does not provide that prisoners must begin receiving credit upon the commencement of a sentence"), *report and recommendation adopted*, 2024 WL 4965618 (W.D. La. Dec. 3, 2024), *with Brenneman v. Salmonson*, No. 5:22-CV-7, 2025 WL 957216, at *7 (E.D. Tex. Feb. 25, 2025) (rejecting respondent's "argument that prisoners are ineligible from earning FSA time credits until they arrive at the BOP facility"), *report and recommendation adopted*, 2025 WL 914352 (E.D. Tex. Mar. 26, 2025). Even if the Court found Lugo-Montalvo eligible to earn FSA credits during those 92 days, he has not shown he "successfully complete[d] evidenced-based recidivism reduction programming or productive activities" during that time. 18 U.S.C. § 3632(d)(4)(A).

Because Lugo-Montalvo has not shown the BOP has improperly denied him FSA credits to which he is entitled, the undersigned alternatively recommends the Court deny his petition on the merits.[1]

III. Conclusion and Recommendation

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. Because Lugo-Montalvo has not exhausted his administrative remedies or shown exhaustion should be excused, the undersigned recommends his petition be dismissed without prejudice. Alternatively, for the foregoing reasons, the undersigned recommends the Court deny Lugo-Montalvo's petition on the merits.

IV. Notice of Right to Object

In accordance with Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1), any party, within fourteen days after being served a copy[2] of this report and recommendation, may serve and file written objections to the recommendations, with a copy to the United States District Judge, the Magistrate Judge, and the opposing party. The District Judge at the time may accept, reject, or modify, in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to the undersigned with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from

---

[1] As explained above, Respondent is correct that Lugo-Montalvo did not properly exhaust his claim with the BOP. But "[b]ecause exhaustion is not a jurisdictional prerequisite to bringing a § 2241 petition, the Court may address the merits of such a petition notwithstanding a lack of exhaustion." *Nichols v. Joslin*, No. 3:04-CV-59, 2005 WL 1017833, at *4 (N.D. Tex. Mar. 25, 2005), *report and recommendation adopted*, 2005 WL 1017844 (N.D. Tex. Apr. 28, 2005).

[2] When a document is served by mail, the party is considered to have been served on the date the document is mailed by the Court. *See* Fed. R. Civ. P. 5(b)(2)(C).

attacking on appeal the proposed factual findings and legal conclusions accepted by the district court for which there is no objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Alexander v. Verizon Wireless Services, L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted, this the 14th day of August, 2026.

s/ *Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE